**Affirmed and Majority and Concurring Memorandum Opinions filed March 24, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00800-CV

## IN THE INTEREST OF M.L.G.J., T.M.J., T.L.W., JR., M.A.J., T.P.R.J., B.W.D. III, M.R.J., and L.C.J., CHILDREN

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-03157J**

# MAJORITY MEMORANDUM OPINION

Appellant C.M.J. (the Mother) appeals the termination of her parental rights to eight Children, M.L.G.J., T.M.J., T.L.W., Jr., M.A.J., T.P.R.J., B.W.D. III, M.R.J., and L.C.J.[1] The Mother raises two issues in which she challenges the trial court's jurisdiction over the oldest child and the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of the Mother's

---

[1] To protect the identities of the minors, we have not used the actual names of the Children, parents, or other family members. *See* Tex. R. App. P. 9.8. The alleged father of two of the Children is deceased. There were four alleged fathers to the other Children whose parental rights were also terminated, but the fathers are not parties to this appeal.

parental rights is in the best interest of the Children. We affirm.

## I.    BACKGROUND

On May 12, 2013, the Department of Family and Protective Services (the Department) received a referral alleging neglectful supervision of the Children. According to the report, the Mother was incarcerated and left her Children in the care of a family friend, Betty, who was also sometimes referred to as the Children's godmother. Betty was arrested and jailed while the Children were in her care, and they were left unsupervised and without adequate food for two days.

The record reflects the Mother has eight Children, six girls and two boys. M.L.G.J., a daughter (Monica), was born January 11, 2000, and she was fourteen at the time of trial. T.M.J., a daughter (Tina), was born February 10, 2002, and she was twelve at time of trial. Four of the younger Children have special needs requiring medical attention and medication. Two of the Children, T.L.W., Jr. (Troy) and Tina have been diagnosed with ADHD. One of the boys, B.W.D., III (Bobby), is autistic and non-verbal. The youngest child L.C.J. (Lisa), who was not yet two years old at the time of trial, is mentally challenged, has impaired vision and hearing loss, and suffers from seizures. In addition, when Lisa was taken into the Department's care, she had scabies, a skin condition caused by mite infestation, and she had not received adequate care.

The Department filed its suit for protection of the Children on May 20, 2013. The Department's investigative caseworker, Lea Mitchell, filed an affidavit setting out the basis for the Department's suit. The affidavit was admitted at trial without objection. When Mitchell went to the residence to investigate the referral, she was told that the Children were gone and their whereabouts were unknown. Mitchell located the Children, except for Monica, at the residence of Donna, Betty's daughter. The oldest child, Monica, was staying with another relative. Donna

2

informed Mitchell her mother had been incarcerated since May 10, 2013, and the Children were left in the care of two teenage relatives. Donna expressed concern that the Children with special needs were not receiving adequate supervision or their prescribed medication. Mitchell also spoke to Tina, Troy, and M.A.J. (Monique), who complained that there was not enough food in the home after Betty's arrest. Lisa was taken to Texas Children's Hospital for an examination by a physician, who confirmed Lisa's reported special needs.

The trial court conducted an adversary hearing on May 30, 2013. At the conclusion of the hearing, the trial court found sufficient evidence supporting danger to the Children and the need for their protection. The court appointed the Department as temporary managing conservator of the Children. The court also appointed Child Advocates, Inc. (the Advocate) as guardian ad litem for the Children. The Children were placed in five different foster homes.

On June 11, 2013, the Department prepared the Mother's family service plan, which required the Mother to complete the specified tasks and services before the Children would be returned to her. These tasks and services included refraining from illegal drug use and criminal activity; submitting to random drug tests; completing a substance abuse assessment; participating in a parenting class; maintaining safe and stable housing and employment for at least six months; participating in individual therapy; and completing a psychosocial assessment. On July 18, 2013, the trial court signed additional temporary orders. In addition to ordering the Mother to complete the services set out in the family service plan, the Mother was ordered to complete a substance abuse treatment program and complete a psychological examination and follow all recommendations. Regular status and permanency hearings were held to monitor the Children's well-being and the Mother's progress in completing the services ordered for reunification with

3

the Children.

The case was tried to the court on May 22, 2014. The Mother testified at trial about her efforts to comply with her court-ordered family service place to obtain reunification with her Children. The Department's substitute care caseworker, Aasyia Freeman, also testified about the circumstances under which the Children came into the Department's care and the Mother's failure to complete the court-ordered services for reunification with her Children. The volunteer Advocate testified about her recommendation that the Mother's parental rights be terminated and the reasons therefor. *See* Tex. Fam. Code Ann. § 107.002(e) (West 2014) (setting out the guardian ad litem's duty to file reports and testify regarding her recommendations relating to the best interest of the child and the reasons for the recommendations). The Mother's counsel objected to the hearsay portions of the Mother's family service plan, but his objection was overruled. The Department's other exhibits were admitted without objection. Included in the exhibits were the records from the Mother's criminal convictions for drug offenses. In addition, the reports from the Mother's positive drug tests were admitted.

At the conclusion of the trial, the court granted the Department's request for termination of the Mother's parental rights to the Children. On September 15, 2014, the trial court signed a final judgment reciting that the Mother's parental rights were terminated based on findings that termination is in the Children's best interest and that the Mother committed acts establishing the predicate termination grounds set out in subsections E and O of Texas Family Code Section 161.001(1). *See* Tex. Fam. Code Ann. §§ 161.001(1)(E) & (O), 161.001(2) (West 2014). The Department was appointed sole managing conservator of the Children. The Mother filed a timely notice of appeal.

## II. JURISDICTIONAL ISSUE

In the Mother's first issue, she challenges the trial court's jurisdiction over Monica, the oldest child. She contends that the 314th District Court lacked jurisdiction over Monica because the 312th District Court had continuing, exclusive jurisdiction over her as a result of a previous suit.

Section 155.001 of the Texas Family Code provides that a court acquires continuing, exclusive jurisdiction over suits affecting the parent-child relationship in connection with a child when a final order is rendered. Tex. Fam. Code Ann. § 155.001(a) (West 2014). The Family Code also provides that "[i]f a court of this state has acquired continuing, exclusive jurisdiction, no other court of this state has jurisdiction of a suit with regard to that child except as provided by this chapter or Chapter 262." *Id.* § 155.001(c). Chapter 262, governing suits for protection of a child filed by a governmental entity, has an express provision governing jurisdiction. Section 262.002 provides: "A suit brought by a governmental entity requesting an order under this chapter may be filed in a court with jurisdiction to hear the suit in the county in which the child is found." *Id.* § 262.002.

A petitioner is required to request from the bureau of vital statistics identification of the court that last had continuing, exclusive jurisdiction over a child unless the petition states that no court has such jurisdiction or that the current court has continuing, exclusive jurisdiction, and the issue is not disputed. *Id.* § 155.101(a). A letter from the State Registrar of Texas Vital Statistics was admitted in evidence. The letter stated that the 312th District Court "last had jurisdiction" over a case involving Monica under docket number 2005-15454. Notably, the letter did not state that the 312th District Court had "continuing, exclusive jurisdiction" over Monica. Thus, the bureau of vital statistics did not provide the information required by the statute.

5

Section 155.104(b) explains the consequences of non-compliance: "If a final order is rendered *in the absence of the filing of the information from the bureau of vital statistics, the order is voidable* on a showing that a court other than the court that rendered the order had continuing, exclusive jurisdiction." Tex. Fam. Code Ann. §155.104(b) (West 2014) (emphasis added). A voidable order may be set aside only by a direct attack. *See Ramsey v. Ramsey*, 19 S.W.3d 548, 552 (Tex. App.—Austin 2000, no pet.).

A judgment is "voidable" when rendered contrary to a statute, constitutional provision or rule, but it is not "void" for lack of jurisdiction. *See Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (orig. proceeding); *see also Jones v. Tex. Dep't of Family & Protective Servs.,* 400 S.W.3d 173, 179 (Tex. App.—Austin 2013, no pet.) (stating that section 155.104(b) expressly provides that an order is voidable, rather than void, upon the required showing that another court had continuing, exclusive jurisdiction).

Errors that make a judgment voidable are subject to waiver and must be preserved pursuant to Texas Rule of Appellate Procedure 33.1. *See Roccaforte v. Jefferson Cnty.,* 341 S.W.3d 919, 923 (Tex. 2011) (stating voidable trial court actions must be timely brought to the court's attention). The Mother did not raise this challenge in the trial court, and it is not preserved.

Moreover, the Mother has not made the required showing under Family Code section 155.104(b). Our record was supplemented with a copy of the order issued by the 312th District Court in cause number 2005-15454. On November 28, 2005, the judge of the 312th District Court signed a default order establishing the father's parent-child relationship with Monica and appointing the parents joint managing conservators with the Mother having the right to determine Monica's residence. The order expressly provided: "All issues relating to regular child

support, medical support, and retroactive support will be reserved until [the father] is released from incarceration." The order is clearly interlocutory, expressly reserving issues for subsequent adjudication. A "final judgment is one which disposes of all legal issues between all parties." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding). Therefore, the 312th District Court has not rendered a final order so as to acquire continuing, exclusive jurisdiction. No final order or judgment from the 312th District Court was ever provided to establish that it was the court of continuing, exclusive jurisdiction. Thus, there was no "showing that a court other than the court that rendered the order in this case had continuing, exclusive jurisdiction" as required to make the judgment over Monica voidable. *See* Tex. Fam. Code Ann. §155.104(b) (West 2014).

We overrule the Mother's first issue.

## III. BURDEN OF PROOF AND STANDARDS OF REVIEW

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child

not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

We consider and weigh all of the evidence, including disputed or conflicting evidence, in reviewing termination findings for factual sufficiency of the evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact

finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

## IV. ANALYSIS

### A. Unchallenged Predicate Termination Findings under Section 161.001(1)

The trial court made predicate termination findings that the Mother had committed acts establishing the grounds set out in subsections E and O, which provide that termination of parental rights is warranted if the factfinder finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has:

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [or]
>
> . . .
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; . . . .

Tex. Fam. Code Ann. § 161.001(1)(E), (O) (West 2014).

The Mother has not challenged the predicate termination findings under section 161.001(1). Unchallenged predicate findings are binding on the appellate court. *See In re E.A.F.,* 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 445 (Tex. 1997). These unchallenged predicate findings can therefore support the best interest finding. *See In re C.H.,* 89 S.W.3d at 28 (holding that the same evidence may be probative of both section 161.001(1) predicate grounds and

9

best interest).

**B.    Best-Interest Finding Under Section 161.001(2)**

In her second issue, the Mother asserts that the evidence is legally and factually insufficient to support the trial court's best-interest finding. We review the entire record in deciding a challenge to the court's best-interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating parental rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533.

*1.    Present and Future Physical and Emotional Danger to the Children*

We begin our analysis by reviewing the evidence supporting the predicate termination grounds found by the trial court that also support a finding that

termination is in the best interest of the Children. *See In re C.H.*, 89 S.W.3d at 27. A parent's ability to provide a child with a safe environment is a primary consideration in determining the child's best interest. *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The Mother has not challenged the trial court's finding that she engaged in conduct, or placed the Children with persons who engaged in conduct, that endangered the Children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(E) (West 2014).

"To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied). The record contains the following evidence supporting the physical and emotional danger to the Children.

### a.     *Drug Use*

The Texas Supreme Court has recognized that a parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345*; see also Edwards v. Tex. Dep't of Protective Servs.*, 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ) (stating a parent's drug use is a condition that can endanger a child's physical or emotional well-being and indicate instability in home environment). A parent's drug use also supports a finding that termination of parental rights is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.); *see also In re M.S.L.,* No. 14-14-00382-CV, 2014 WL 5148157, at

*6 (Tex. App.—Houston [14th Dist.] Oct. 14, 2014, no. pet.) (mem. op.). The factfinder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also In re J.N.H.*, No. 02–11–00075–CV, 2011 WL 5607614, at *8 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming a trial court's decision that termination was in the best interest of the child).

The record here shows that the Mother tested positive for illegal drugs while the Children were in the Department's care. On November 14, 2013, the trial court ordered the Mother to undergo drug testing. Her urinalysis that day was negative, but a hair follicle test was positive for marijuana and cocaine. Caseworker Freeman testified that the Mother tested positive again on March 18, 2014. Freeman acknowledged that the results for cocaine and marijuana were lower on the test taken in March, two months before trial.

At trial, the Mother admitted she was incarcerated for possession of cocaine from December 6, 2011 to July 19, 2013. She stated she was arrested on October 21, 2008, and originally placed on probation. The Mother subsequently violated the terms of her probation, but she claimed that the probation violation was for failing to pay the required fees and complete community service. The Mother admitted using marijuana when she got out of prison, but she denied using cocaine or methamphetamine. She acknowledged the positive drug tests for marijuana, but she took issue with tests showing positive results for cocaine use. The Mother testified that from November 2013 until trial she had not used any illegal drugs, although she had earlier admitted using marijuana after her release from jail. The trial court, as the factfinder, evaluated the credibility of the Mother's testimony, and we may not disturb that determination. *See In re H.R.M.,* 209 S.W.3d at 109.

12

In addition to the Mother's admitted use of marijuana after her release from incarceration, the Mother's positive drug tests are evidence that she continued to use drugs in the face of a court order conditioning her reunification with her Children on her ability to remain drug-free. Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct and that termination is in the best interest of the child. *Cervantes–Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc).

The Mother also associated with other drug users. A court should consider whether there is a history of substance abuse by the Children's family or others who have access to their home in determining the best interest of the Children. *See* Tex. Fam. Code Ann. § 263.307(b)(8) (West 2014). On May 30, 2013, Lester, the father of two of the Children and husband of the Children's caregiver, Betty, tested positive for marijuana, cocaine, and phencyclidine. The same day, Michael, Monica's father, also submitted to drug testing. His hair follicle test was positive for amphetamine, methamphetamine, and cocaine.

### b. *Criminal History*

The Mother's criminal records were admitted at trial. In 2008, the Mother was arrested and charged with possession of methamphetamine and cocaine in a drug free zone. In 2009, she was placed on deferred adjudication community supervision. Her probation was revoked and her guilt was adjudicated on March 9, 2012. She was sentenced to two years in prison. At the time of these drug charges, the Mother had five young Children under the age of eight. She had two more Children before being sent to prison, and the youngest Child, Lisa, was born while she was incarcerated. The Mother claimed she had stopped using drugs after her

13

release from incarceration.

While imprisonment alone is not a basis to terminate a parent's rights, it is an appropriate factor to consider because when a parent is incarcerated, he or she is absent from the child's daily life and unable to provide support to the child, negatively impacting the child's living environment and emotional well-being. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.). The trial court could reasonably have determined that the Mother's drug use and resulting incarceration endangered the physical and emotional well-being of the Children and that termination is in their best interest. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (a parent's incarceration is an appropriate factor to consider in making a best-interest determination).

### c. *Domestic Violence*

In considering the best interest of a child, courts should evaluate whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home. *See* Tex. Fam. Code Ann. § 263.307(b)(7) (West 2014). As part of its investigation, the Department reviewed previous allegations of abuse or neglect involving the Children. In 2006, the Department was contacted about an allegation of physical abuse and neglectful supervision of Troy, who was then two years old. It was alleged that Lester hit Troy in the head with his closed fist during a physical alternation with the Mother. Troy was left with a bump on the head. The report was determined "reason to believe," but the case was closed after determining the risk factors were controlled.[2]

A parent's abusive or violent conduct can produce a home environment that

---

[2] "Reason to believe" means that the Department has a preponderance of evidence that abuse occurred under the Texas Family Code's definition of abuse or neglect. *See P.A.G. v. Tex. Dep't of Family & Protective Servs.*, No. 08-14-00231-CV, 2014 WL 6961758, at *15 (Tex. App.—El Paso Dec. 9, 2014, no pet.) (mem. op.)

endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). "Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *Id.* at 845–46. The factfinder may infer from past conduct endangering a child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). This evidence of violence and abuse supports the trial court's best-interest finding. *See In re J.I.T.P.*, 99 S.W.3d at 846 (stating domestic violence, even when the child is not the intended victim, supports a finding that termination is in the child's best interest). One parent's endangerment of a child by permitting exposure to the other parent's dangerous conduct is a relevant consideration in determining a child's best interest. *See In re O.N.H.*, 401 S.W.3d 681, 684–85 (Tex. App.—San Antonio 2013, no pet.). The factfinder reasonably could have considered that Lester's acts of violence would continue in the future. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

### d. Lack of Stability

Stability and permanence are paramount in the upbringing of children. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied). Failure to maintain stability endangers a child's physical and emotional well-being. *See In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013), *aff'd,* 437 S.W.3d 498 (Tex. 2014). Evidence of a parent's unstable lifestyle also can support a factfinder's conclusion that termination of parental rights is in the child's best interest. *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.). A parent's failure to show that she is stable enough to parent a child for any prolonged period entitles the trial court "to determine that this pattern would likely

continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.).

The Children have been faced with instability since before the Department's involvement. Their Mother had been incarcerated for almost two years by the time the Department received the referral alleging neglectful supervision. At that time, the Children's primary caregiver for two years, Betty, was also incarcerated and the Children were left unsupervised. The fathers of the Children were in and out of prison.

The record reflects that the fathers of five of the Children engaged in criminal behavior and the factfinder could infer the Mother's association with them contributed to the unsafe environment surrounding the Children.[3] Monica's father, Michael, was convicted of aggravated sexual assault of a child on March 2, 2001, and he was sentenced to ten years in prison. On December 14, 2011, he was convicted of failure to comply with sex offender registration requirements and sentenced to two years in prison. The father of two of the youngest Children, Dwayne, had numerous convictions, including for delivery of cocaine. The most recent of these convictions, after his Children were born, was a conviction for aggravated robbery on August 10, 2011, for which he was sentenced to eight years in prison. On May 6, 2010, Dwayne was convicted of unauthorized use of a motor vehicle and sentenced to eleven months in jail.

Lester, the father of Monique and T.P.R.J. (Tanya), also had several convictions after the birth of his Children. Lester was convicted of attempted

---

[3] While evidence of the conduct of others is not relevant to endangerment under subsection E, we may consider the Children's environment in our best-interest analysis. *See* Tex. Fam. Code Ann. § 263.307 (West 2014) (including the safety of the child's environment as part of the best-interest analysis).

assault on a family member, as a second offender, on October 14, 2013 and sentenced to eight months in state jail. On May 4, 2011, Lester was convicted of attempted burglary of a habitation and sentenced to two years in prison. Lester was convicted of evading arrest on January 18, 2011, and sentenced to thirty days in jail. On March 13, 2009, Lester was convicted of both assault and assault on a family member, and sentenced to sixty days in jail in each case. On November 24, 2009, Lester was convicted of delivery of cocaine and sentenced to six months in state jail. Lester is also the husband of Betty, who had been the Children's caregiver for two years before this suit was filed.

Caseworker Freeman testified that termination of the Mother's parental rights is in the Children's best interest because "the mother is not stable. She's continued to use drugs. She doesn't have a home. She continued to live with the people who are the reason that her kids came into care. I believe that she still may be living with them now. She's just completely unstable." Even though the Mother had been out of jail since July, at the time of trial ten months later, the Mother still had not established stable housing appropriate for her Children. The Mother testified she was living with her aunt. A few months earlier, at the November permanency hearing, the Mother testified she lived with her godmother. She testified she recently had found a house, but it was not large enough for her Children to live with her. In any event, the factfinder may conclude that a parent's changes shortly before trial are too late to have an impact on the best-interest determination. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (explaining that a father's "efforts to improve his ability to effectively parent on the eve of trial [were] not enough to overcome a decade of poor parenting and neglect" in evaluating the best interest of the children).

The factfinder reasonably could have concluded the Mother's lack of

17

stability supported the finding that termination is in the Children's best interest. *See In re A.C.*, 394 S.W.3d at 643 (considering parents' history of homelessness in concluding their inability to provide a safe and stable environment supported the trial court's finding that termination was in the child's best interest); *see also L.Z. v. Tex. Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *10–11 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (holding the best-interest finding was supported where the father had a history of instability, domestic violence, and criminal activity).

### 2. *Non-Compliance with Services*

The Mother also has not challenged the trial court's finding that she failed to comply with the provisions of a court order establishing the actions necessary for her to obtain the return of the Children after their removal because of abuse or neglect. *See* Tex. Fam. Code Ann. § 161.001(1)(O) (West 2014). In determining the best interest of the Children in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the Children. *See In re E.C.R.*, 402 S.W.3d at 249 ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding."); *see also In re E.A.F.,* 424 S.W.3d at 752 (considering the failure to participate in services required for reunification in reviewing the best-interest determination).

The Mother's family service plan was admitted in evidence. The service plan required the Mother to complete the following tasks and services: provide signed releases for medical information and maintain monthly contact with the caseworker; refrain from illegal drug use and criminal activity; attend all court hearings and meetings after release from incarceration; participate in an eight-week parenting class and demonstrate learned behaviors; maintain safe and stable

18

housing for at least six months and provide copies of the lease and utility bills; provide documentation of sources of monthly income and maintain stable employment for at least six months; participate in individual therapy and follow all recommendations; complete a psychosocial assessment and follow all recommendations; submit to random drug tests; and complete a substance abuse assessment and follow all recommendations. In addition, the court signed additional temporary orders requiring the Mother to complete all the services in the Department's plan of service to obtain the return of the Children. In addition to the services itemized in the service plan, the court ordered the Mother to complete a substance abuse treatment program, if recommended; and to complete a psychological examination and follow all recommendations.

Caseworker Freeman testified that the Mother completed a psychosocial assessment and a substance abuse assessment. Freeman testified the Mother was required to complete outpatient drug treatment, as recommended in her assessment, but the Mother failed to show up. As a result of the Mother's psychosocial assessment, she was required to complete individual therapy. Freeman testified the Mother only attended therapy sporadically. Freeman stated the Mother did not complete her eight-week parenting class. In addition, the Mother did not provide evidence that she had a stable residence for six months. Freeman testified that she had been told the Mother got a job at Popeye's, but she failed to provide paycheck stubs as required by her service plan. Freeman testified the Mother had moved and she did not know where the Mother was living.

The Mother acknowledged that she had been given a family plan of service. Although she first claimed she had completed the services, the Mother later admitted that she did not complete the tasks set out in the plan. She acknowledged that she violated her family service plan by testing positive for illegal drugs. She

19

admitted she did not complete drug abuse treatment or individual therapy. She testified that she currently was working at Igloo and in home health care. She had been working in health care since October 2013, and she had been working at Igloo since January 2014. She stated she had earlier worked for Popeye's, but quit because Igloo paid better. The Mother testified that she was currently living with her aunt, and she had resided there for seven months. She testified she had found a house, but the caseworker had told her she needed a larger residence if she wanted the Children to live there.

The undisputed evidence that the Mother failed to complete parenting classes, participate in individual therapy, and undergo drug abuse treatment demonstrates that the Mother did not prioritize improving her ability to parent the Children so that they could be returned to her care. A parent's efforts to improve or enhance parenting skills are relevant in determining whether a parent's conduct results in endangerment. *See In re D.T.*, 34 S.W.3d 625, 640 (Tex. App.—Fort Worth 2000, pet. denied). The willingness and ability of the Children's family to seek out and complete counseling services and effect positive changes should be considered in evaluating the Children's best interest. *See* Tex. Fam. Code Ann. § 263.307(b)(10), (11) (West 2014).

The Mother's failure to make use of the rehabilitative services offered by the Department supports the trial court's best-interest finding. Although the Mother was provided an opportunity to address her drug use and parenting through her family service plan, she failed to do so. The trial court could infer that the Mother's failure to address her involvement with illegal drugs would lead to continued drug use. *See In re J.D.,* 436 S.W.3d at 118 (stating a fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent).

### 3. Children's Desires, Needs, and Proposed Placement

Some of the Children were very young at the time of trial and our record contains no evidence of their desires. When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The Advocate testified that the Children love their Mother, but they do not ask to see her or ask if they can go home to her. The Advocate said only Troy ever mentioned going home. The Advocate testified the baby, Lisa, has special needs. She has syphilis, brain damage, and hearing loss. Lisa, who was almost two at the time of trial, still drank from a bottle and could not eat solid food. In the Advocate's opinion, the Mother would not be able to take care of Lisa. The Advocate acknowledged that it may be difficult to find an adoptive home for Lisa. Although the Children were not all placed together, the foster homes worked together to make sure the siblings were able to visit each other. In the Advocate's opinion, it is in the best interest of the Children to terminate the Mother's parental rights.

Caseworker Freeman testified the Children were placed in four different foster homes. Although Monica was placed in an emergency shelter when she first entered the Department's care, she was moved, with the trial court's approval, to a foster home with one of her siblings. Freeman testified Monica, who was then fourteen, wants to remain in her current placement. At times in the past, Monica had stated she wanted to be with her Mother. All the Children are doing well in foster care. The Advocate testified the girls were "doing really well in school, great." The Advocate's report stated the Children had monthly visits with each

other and that all their needs were being met. Troy was being evaluated for a learning disorder. He also had received counseling and medication to treat an adjustment disorder.

The Children's foster homes were not adoptive homes. The Department has made progress in its efforts to find permanent placements for the Children, however. There is a caregiver who wants to adopt Lisa and Bobby, but she was not an approved adoptive home at the time of trial. A paternal grandmother wants to adopt Monique, and a home study on her home has been approved. The Department was in the process of requesting that Monique be moved to her grandmother's residence.

The Mother argues that termination is not in the Children's best interest because the foster homes in which the Children are placed are not adoptive homes and adoptive homes have not been located. Plans for adoption are relevant, but evidence about definitive plans are not dispositive in a parental termination case filed by the State. *In re C.H.*, 89 S.W.3d at 28.

### 4.    *Parenting Abilities*

The factfinder may consider a parent's parenting skills in a best-interest analysis. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.); *see also* Tex. Fam. Code Ann. § 263.307(b)(12) (West 2014). As part of our review of a finding that termination is in the Children's best interest, we may also consider the Mother's past performance as a parent in evaluating her fitness to provide for the Children. *See In re C.H.*, 89 S.W.3d at 28. Although evidence of past misconduct or neglect alone may not be sufficient to show present unfitness, a fact finder may measure a parent's future conduct by her past conduct and determine that it is in a child's best interest to terminate her parental rights. *See In re A.N.D.,* No. 02-12-00394-CV, 2013 WL 362753, at *2 (Tex. App.—Fort Worth

Jan. 31, 2013, no pet.) (mem. op.).

The Mother had not parented her Children during the two-year period preceding this case. She left the Children in the care of Betty, the wife of the father of two of the Children, Lester. Lester has a criminal and drug history and was investigated by the Department for injuring Troy during a domestic violence incident. During the Department's investigation of the allegations of neglectful supervision in this case, the investigator interviewed Tina, who was then almost eleven years old. Tina told the investigator that the Children had been with Betty for about two years and Betty was more of a mother to them than the Mother. Tina also said that after Betty's arrest, they were left with a seventeen-year-old and an eighteen-year-old, and there was insufficient food in the house. In addition, Lisa needed medication to treat seizures. Troy, who was then about ten years old, also said that the Children did not have enough food. Troy also explained that Betty was in jail for attempting to run down her husband, Lester, with a car.

Caseworker Freeman testified that the Mother had been inappropriate with the Children during her visits. She heard the Mother tell the Children that they could come home to her. The Children would become upset when they later could not go home with the Mother. In addition, Freeman testified the Mother accepted money from two of the Children. Freeman said Monica gave the Mother $10 during a visit after asking if she needed money. In addition, the Mother often informed the Department she would bring food to the visits, but she would either come without food or bring just a few snacks that were not sufficient for all the Children. The Mother also spent a lot of time on the phone during her visits with the Children.

The Mother admitted she had not complied with her service plan. The Mother did not complete the required parenting classes. In addition, caseworker

Freeman testified she had recently asked the court to stop the Mother's visits with the Children because she tested positive on her last drug test. The caseworker testified that only the three oldest Children appeared to have bonded with the Mother. She testified that in her opinion, it is in the Children's best interest not to see the Mother.

The Mother testified she has a good relationship with her Children and they are all bonded with her. She explained that the little ones played with toys during her visits. She said that at the end of her visits, everyone was sad and crying. The Mother said the Children would be sad if they were not allowed to visit her. The Mother testified Monica tried to give her $10 once, but she refused the money. She acknowledged that the caseworker told her not to tell the Children they were coming home to her. She explained that instead she says she prays the Children come home. The Mother denied that she failed to bring sufficient food to her visits with the Children. She testified she brought pizza and there was enough for even the caseworker to eat.

The Advocate's report states that the Mother refused to recognize that Lisa has special needs, despite her loss of vision and hearing, seizures, and her inability to eat solid food. In the Advocate's opinion, the Mother lacked the ability to care for Lisa's special needs. The Advocate's report stated that in her visits, the Mother tended "to treat her children like they are her friends, and she has often made inappropriate comments to them regarding coming home soon."

Caring for eight children under the age of fourteen, some with special needs, is challenging. It is appropriate to take into account not only the Children's ages, but also any physical or mental vulnerabilities they may have in considering their best interest. *See* Tex. Fam. Code Ann. § 263.307(b)(1) (West 2014). The Mother's failure to successfully complete the court-ordered services demonstrates her poor

choices as a parent. A mother's love for her children will not obviate the fact that she is unable to provide her children with a safe, stable home. *See In re K.C.*, 88 S.W.3d 277, 279 (Tex. App.—San Antonio 2002, pet. denied).

The trial court could reasonably have considered that the Mother demonstrated limited parenting ability. The lack of evidence that the Mother could parent the Children properly supports the best-interest finding. *See H.N. v. Dep't of Family & Protective Servs.*, 397 S.W.3d 802, 814 (Tex. App.—El Paso 2013, no pet.) (stating the father's failure to demonstrate his parenting abilities supported the finding that termination was in the best interest of the child).

### 5.    *Summary*

In sum, the record contains sufficient evidence to support the best-interest finding based on the Mother's lack of a safe, stable home environment after being incarcerated for nearly two years, failure to complete her court-ordered services, and continued drug use, even while these proceedings were pending. It was within the trial court's discretion to determine the weight and credibility of the Mother's testimony. *In re K.A.S.*, 131 S.W.3d 215, 229–30 (Tex. App.—Fort Worth 2004, pet. denied). The factfinder resolved all credibility issues and we may not disturb that determination. *See In re H.R.M.*, 209 S.W.3d at 108; *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights is in the Children's best interest. *See J.F.C.*, 96 S.W.3d at 265–66. In light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the best-interest finding is not so significant that a fact finder could not reasonably have formed a firm belief or conviction that termination of the Mother's parental rights is in the

Children's best interest. *See In re H.R.M.*, 209 S.W.3d at 108. After considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in the Children's best interest. We therefore overrule the Mother's second issue.

## V. CONCLUSION

We have overruled the Mother's jurisdictional challenge concerning Monica, the oldest child, and we have determined that legally and factually sufficient evidence supports the trial court's finding that termination of the Mother's parental rights is in the best interest of the Children. Therefore, the trial court's judgment is affirmed.

/s/ John Donovan
Justice

Panel consists of Justices Christopher, Donovan, and Wise. (Christopher, J., concurring).