

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| H.N., | ' | No. 08-11-00364-CV |
| Appellant, | ' | Appeal from the |
| v. | ' | 143rd District Court |
| DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | ' | of Ward County, Texas |
| Appellee. | ' | (TC# 10-04-22313-CVW) |
| | ' | |

## <u>OP I N I O N</u>

Appellant H.N. appeals from the trial court's order terminating his parental rights to his child, S.R, and appointing S.R.'s foster parents as joint managing conservators.[1]   We affirm.

### BACKGROUND

S.R., the child involved in this case was born on February 1, 2010, and came under the care and custody of the Texas Department of Family and Protective Services ("the Department") in April 2010 after being removed from his mother.   S.R. has continuously resided with his foster parents since June 2010.   The Department first contacted H.N. in September or October 2010.   Shelby Couch ("Ms. Couch"), the initial case worker, testified that when she contacted H.N., H.N. thought he was S.R.'s father, but wanted a DNA test "just to be sure."   Because the

---

[1] S.R.'s foster parents are Intervenors in this matter.

Department was having trouble serving H.N., Ms. Couch asked H.N. to write a letter to the trial court notifying the court that he knew about the case and that he wanted a DNA test. On February 10, 2011, H.N. was adjudicated as the father of S.R. After a hearing on April 14, 2011, the trial court entered a final order affecting the parent-child relationship which was signed on May 23, 2011. The May 2011 order appointed the Department as S.R.'s sole managing conservator, named H.N. and R.R. possessory conservators with the right to weekly supervised visitation, and ordered the Department to initiate an Interstate Compact on the Placement of Children ("ICPC") home study on the home of H.N. in California.

On June 9, 2011, S.R.'s foster parents filed an original petition in intervention seeking conservatorship of S.R. and termination of H.N.'s and R.R.'s parental rights. In July 2011, the Department received notice that the California Department of Children and Family Services denied placement of S.R. in H.N.'s home after having completed a home study on his home.

On August 11, 2011, the Department filed a petition seeking to modify the prior order and to terminate the parent-child relationship.[2] A hearing on the Department's petition was held on November 10, 2011. At the termination hearing, the trial court took judicial notice of the previous filings in the case, including R.R.'s affidavit of relinquishment, the results of the ICPC home study on H.N.'s home, and a letter dated October 13, 2010, from H.N. to the trial court.[3]

---

[2] Thereafter, R.R. executed a voluntary relinquishment of her parental rights.

[3] In his letter, H.N. recites that R.R. informed him that she and S.R. were traveling to Texas to visit family and would return in a few weeks. H.N. further writes that he first learned S.R. was taken from his mother after having received a phone call from a family friend and that he immediately called CPS in Texas. In his letter, H.N. asks the trial court for a DNA test to prove he is S.R.'s father and states that he is willing to complete any mandates so that S.R. will be returned to his custody in California.

2

After the hearing, the trial court granted the Department's petition to modify the May 2011 order based on a finding that the circumstances of the child, a conservator or other party affected by the prior order had materially and substantially changed since the rendition of the order. The trial court found clear and convincing evidence to support termination of H.N.'s parental rights under sections 161.001(1)(C), (F), and (N) of the Texas Family Code, and that termination was in the best interest of S.R. The trial court's order terminated the parental rights of H.N. and R.R., found that the appointment of H.N. as managing conservator was not in S.R.'s best interest, dismissed the Department as a party with reference to S.R., and appointed S.R.'s foster parents as joint managing conservators. H.N. filed a notice of appeal.

## DISCUSSION

On appeal, H.N. raises fives issues for our review. In Issues One through Three, H.N. challenges the sufficiency of the evidence to terminate his parental rights. In Issue Four, H.N. complains that there was legally and factually insufficient evidence to support a determination that termination was in the best interest of S.R. In Issue Five, H.N. complains that the trial court erred in appointing S.R.'s foster parents as joint managing conservators of S.R.

### Standard of Review

In a termination of parental rights proceeding, the petitioner must show by clear and convincing evidence that: (1) the parent committed one or more of the acts specifically set forth in Texas Family Code section 161.001(1) as grounds for termination; and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1) (West 2008). "Clear and convincing evidence" means the measure or degree of proof that "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be

3

established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see also In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007) (contrasting the standards applied in termination proceedings and the standards applied in modification proceedings). We strictly scrutinize termination proceedings and construe any statutes authorizing involuntary termination in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20-21 (Tex. 1985).

When reviewing legal sufficiency challenges to termination findings, we consider all of the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d at 266. We give deference to the fact finder's conclusions and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *Id.; In re J.F.C.,* 96 S.W.3d at 266. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.,* 180 S.W.3d at 573; *In re J.F.C.,* 96 S.W.3d at 266.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings, and we cannot supplement such judgment with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*; *In re J.F.C.,* 96 S.W.3d at 266.

**STATUTORY GROUNDS FOR TERMINATION**

4

In four issues on appeal, H.N. argues that the evidence was legally and factually insufficient to support the termination of his parental rights pursuant to: (1) Texas Family Code section 161.001(1)(C); (2) Texas Family Code section 161.001(1)(F); (3) Texas Family Code section 161.001(1)(N); and (4) on best-interest grounds. Because we need to find only one of the above grounds for termination sufficient to uphold the trial court's termination order, we will address the constructive-abandonment ground raised in Issue Three. *See In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App. – Fort Worth 2007, no pet.).

## CONSTRUCTIVE ABANDONMENT

Under Section 161.001(1)(N) of the Texas Family Code, a parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for at least six months; (2) the State or authorized agency has made reasonable efforts to return the child to the parent; (3) the parent has not regularly visited or maintained significant contact with the child; and (4) the parent has demonstrated an inability to provide the child with a safe environment. *See* TEX. FAM. CODE ANN. § 161.001(1)(N) (West 2008); *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App. – Fort Worth 2009, no pet.) (op. on reh'g); *In re A.S.*, 261 S.W.3d 76, 88-89 (Tex. App. – Houston [14th Dist.] 2008, pet. denied). H.N. contests the legal and factual sufficiency of the evidence to support all four elements of the constructive abandonment ground.

### 1. *Permanent or Temporary Managing Conservatorship of Child*

Initially, H.N. challenges the requirement that S.R. has been under the Department's conservatorship for at least six months. However, the record shows that S.R. was born on February 1, 2010, and was taken from his mother when he was four months old and placed in

5

foster care by the Department. Although the record before us does not contain a copy of the order initially appointing the Department as S.R.'s temporary managing conservator, when the instant hearing began, the trial court took judicial notice of all prior filings in the case and a letter from H.N. to the trial court indicating that, as of October 2010, H.N. was aware that S.R. was in the custody of the State of Texas. The record shows that after a hearing on April 14, 2011, the trial court signed an order on May 23, 2011 appointing the Department as the sole managing conservator of S.R. The Department continued to act as managing conservator up until the November 10, 2011 termination hearing. Additionally, Cruz Tovar ("Mr. Tovar"), the second case worker assigned to this case, testified that S.R. had been in the custody of the Department for fourteen months at the time of the termination hearing. Based on the record before us, we conclude that the trial court could have formed a firm belief or conviction that the Department satisfied the statutory six-month requirement. *See* TEX. FAM. CODE ANN. § 161.001(1)(N) (West 2008). Therefore, the evidence is sufficient to satisfy the six-month conservatorship element.

## 2. *Reasonable Efforts to Return Child*

H.N. contends the Department was required to make an effort to reunify him with S.R. by making a new service plan under Section 263.102 of the Family Code. H.N. fails to cite to any legal authority to support his arguments. *See* TEX. R. APP. P. 38.1; *In re J.A.M.R.*, 303 S.W.3d 422, 425-26 (Tex. App. – Dallas 2010, no pet.).

Generally, the Department's implementation of a service plan is considered a reasonable effort to return a child. *In re M.R.J.M.*, 280 S.W.3d at 505; *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App. – Fort Worth 2002, no pet.). Here, the record clearly shows the Department created

6

a service plan for H.N. At the termination hearing, Ms. Couch testified that she explained the service plan to H.N. and talked to him about the importance of completing the services. Ms. Couch also provided H.N. with suggestions on how to go about getting services and provided him with the number to his local CPS office and indicated that he could contact them in order to obtain community resources. Ms. Couch explained to H.N. that a home study on his home would be necessary to place S.R. out-of-state. Ms. Couch testified that H.N. wanted to wait on the home study because H.N. was living with somebody and did not feel he was stable.

Mr. Tovar testified that after H.N. was declared to be S.R.'s father, he sent H.N. a revised family service plan. Mr. Tovar went over that plan with H.N. on the phone. Mr. Tovar confirmed that H.N. received the service plan. Mr. Tovar attempted to help H.N. find services by calling agencies in California, scheduling an appointment for H.N. at an agency, and providing him with a list of California service providers.

The Department also provided H.N. with weekly supervised visitation with S.R. in Texas. Although H.N. resided in California and had financial difficulties, he did not ask the Department, his legal counsel, his family, or his friends if they would assist him in making visitation arrangements. The Department requested that ICPC home studies on the homes of H.N. and his aunt be completed. However, both home studies were denied by the State of California as possible placements for S.R.

Mr. Tovar testified that the Department exhausted all of its options for placing S.R. with H.N.'s relatives and explained that the Department's initiative in conducting the home studies constituted a reasonable effort made by the Department. Based on this evidence, we conclude that legally and factually sufficient evidence supported the trial court's conclusion that the

7

Department had made reasonable efforts to return S.R. to H.N. *See In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App. – Amarillo 2011, no pet.) (considering testimony showing department's evaluation of other family members' homes as possible placements as part of the department's reasonable efforts to return child); *see also In re K.J.T.M.*, No. 06-09-0104-CV, 2010 WL 1664027, at *3 (Tex. App. – Texarkana Apr. 27, 2010, no pet.) (department's attempts "although futile," to place child with relatives supported finding of reasonable efforts to return to child to incarcerated father). The second element of the constructive abandonment ground has been satisfied.

### 3. *Visitation and Contacts with Child*

H.N. contends he was not assisted in visiting or contacting S.R. At the time of the termination hearing, it had been close to one and one-half years since H.N. had last seen S.R. Since that time, H.N. had not had any contact with S.R. until the day before the termination hearing. H.N. testified that he had tried to make contact with S.R., but the Department would not let him have any contact until a DNA test was conducted and he was proven to be S.R.'s father. H.N. acknowledged that the Department told him that he could send letters, cards, or gifts to S.R., but he claimed that he was never given any information on where to send those items. When asked if he was so busy after the April 2011 hearing such that he could not contact or visit S.R., H.N. claimed he did not have a phone number for S.R.'s foster parents or the Department. He also claimed that Mr. Tovar did not want to give him any information about the whereabouts of S.R.

In its May 2011 order, the trial court had appointed H.N. as S.R.'s possessory conservator and allowed H.N. to have weekly supervised visits with S.R. Here, the evidence shows that

8

H.N. never traveled to Texas to visit with S.R. prior to the termination hearing. H.N. explained that he did not visit S.R. because he could not afford to visit,[4] and did not have time to visit S.R. because he was busy meeting the Department's requirements. However, H.N. admitted that he had failed to meet any of the services the Department asked him to complete.

Ms. Couch testified that she never told H.N. that he could not have contact with S.R. until a DNA test was completed. She also testified that the Department did not do anything to try to keep H.N. from seeing S.R. and never told H.N. that he could not come to see S.R. Ms. Couch informed H.N. that he could send S.R. letters, cards, and drawings and made sure that H.N. had her address, office number, and cell number. Ms. Couch testified that H.N. knew who to contact if he wanted information about S.R. Ms. Couch sent H.N. a picture of S.R. According to Ms. Couch's testimony, H.N. did not visit S.R. in Texas because H.N. had indicated that "it was so far away." Ms. Couch explained that had H.N. sought to visit S.R. the Department would have made efforts to arrange for that to happen.

Mr. Tovar testified that he, too, provided H.N. with his contact information and had informed H.N. that he could contact S.R. and send him things. However, Mr. Tovar testified that H.N. never maintained any contact with S.R. Mr. Tovar testified that he was not aware of H.N. ever calling S.R. on the phone or sending S.R. any letters, cards, gifts, photos, or drawings. Since the April 2011 hearing, H.N. had not made contact with Mr. Tovar, had not returned Mr. Tovar's phone calls, and had not asked Mr. Tovar about S.R. S.R.'s foster mother testified that both she and H.N. had attended hearings in this case at which it was made clear who H.N. needed to contact if he wanted to see S.R.

---

[4] H.N. has been unemployed since 2009 and currently works for a moving company "under the table" whenever he's needed.

Given the inconsistencies concerning whether H.N. had the necessary information needed to contact or visit S.R., the trial court was free to disbelieve some or all of the testimony presented and reasonably could have formed a firm belief or conviction that H.N. had not regularly visited or maintained significant contact with S.R. We conclude the evidence was legally and factually sufficient to support the trial court's conclusion that H.N. did not visit or maintain contact with S.R. *See In re J.J.O.*, 131 S.W.3d 618, 630 (Tex. App. – Fort Worth 2004, no pet.) (finding that mother failed to regularly visit or maintain significant contact with child supported by legally and factually sufficient evidence when mother made only twelve visits during nine-month period); *M.C. v. Tex. Dep't of Fam. & Protective Servs.*, 300 S.W.3d 305, 310 (Tex. App. – El Paso 2009, pet. denied) (finding that mother failed to regularly visit or maintain significant contact with the child when she visited only six to eight times in one year); *In re B.S.T.*, 977 S.W.2d 481, 486 (Tex. App. – Houston [14th Dist.] 1998, no pet.), *overruled in part on other grounds by In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002) (evidence sufficient to support constructive abandonment ground where parent was advised of his right to visit, visited twice, but made no other visitation efforts, and caseworker testified all reasonable efforts made to return child to parent). The third element of constructive abandonment has been met.

### 4. *Inability to Provide Safe Environment for Child*

H.N. contends that there was little or no evidence that his living environment was unsafe or unsuitable for a child. In the instant case, the trial court ordered an ICPC home study on H.N.'s home. When the proposed placement of the child is out-of-state, the Department must comply with ICPC requirements, which includes written notice from the state of proposed placement that the placement does not appear contrary to the child's interests. *See* TEX. FAM.

CODE ANN. § 162.102 (West 2008). The trial court was presented with evidence that the State of California denied placement of S.R. with H.N. after completing the required ICPC home study. Mr. Tovar testified that the home study was denied because of the living conditions of the home and the financial instability of the home. He further explained that H.N.'s home study demonstrated that the proposed placement was an unstable environment for S.R. and that the house was inappropriate for a child of S.R.'s age.

The record establishes H.N.'s inability to maintain stable employment or a permanent home. H.N. testified that he lives with his grandmother, but explained that they were moving because their rent was raised and because of the results of the ICPC home study.[5] When asked if he was able to provide a home for S.R., H.N. testified, "[n]ot right now, but I will be." Although H.N. stated that he was in the process of moving into his aunt's home, the record shows that he had been in the process of moving for two months and that at the time of the termination hearing he had not moved. The evidence also demonstrates that the State of California denied placement of S.R. in the home of H.N.'s aunt.[6] The record shows that H.N. did not provide any money to S.R's foster family to assist in his care or otherwise support S.R. in any way from the time S.R. left California with his mother up until the termination hearing in November 2011. Given H.N.'s lack of stable employment and lack of a permanent and safe place to live in which S.R. could reside, there is serious concern as to whether H.N. could attend to the needs of a young child. Therefore, after reviewing all the evidence, we conclude there is legally and factually sufficient evidence to support the trial court's determination that H.N.

---

[5] H.N. indicated that he and his grandmother would be moving into different residences.
[6] Placement of S.R. in the home of H.N.'s aunt was denied due to his aunt withdrawing her home from the home study process. At the time of the hearing, H.N.'s aunt had not asked the Department to reopen the home study on her home.

11

demonstrated an inability to provide S.R. with a safe environment. *See M.C.*, 300 S.W.3d at 310 (mother's inability to provide safe environment for child demonstrated by sufficient evidence where mother, among other things, did not provide for the child's necessities, lacked steady employment, and had no permanent housing in which the child could reside with her); *In re J.J.O.*, 131 S.W.3d at 629-30 (same). The fourth element of constructive abandonment ground has been satisfied.

After carefully reviewing the entire record under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to establish by clear and convincing evidence that H.N. constructively abandoned S.R. *See* TEX. FAM. CODE ANN. § 161.001(1)(N) (West 2008); *In re R.M.*, No. 14-02-00221-CV, 2003 WL 253291, at *5 (Tex. App. – Houston [14th Dist.] Feb. 6, 2003, no pet.) (mem. op.) (constructive abandonment ground established by legally and factually sufficient evidence where mother did not visit child regularly, maintain significant contact with child, establish a permanent residence, maintain stable employment, or attend recommended therapy sessions); *In re P.R.*, 994 S.W.2d 411, 416 (Tex. App. – Fort Worth 1999, pet. dism'd w.o.j.) (constructive abandonment ground supported by sufficient evidence where mother visited children sporadically, had unsteady employment history, and no permanent housing), *disapproved on other ground by In re J.F.C.*, 96 S.W.3d at 267. Issue Three is overruled.

Because we conclude there was legally and factually sufficient evidence to support termination under Section 161.001(1)(N), we need not address H.N.'s first and second issues challenging the sufficiency of the evidence to support the other predicate grounds for termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re D.M.*, 58 S.W.3d 801, 813

12

(Tex. App. – Fort Worth 2001, no pet.); *see also* TEX. R. APP. P. 47.1.

## BEST INTEREST OF CHILD

In Issue Four, H.N. argues that the evidence was legally and factually insufficient to support a finding that termination of his parental rights was in the best interest of S.R. Specifically, H.N. maintains that the Department is "snatch[ing] a baby out from under a willing father's rightful custody and plac[ing] it with a wealthier family."

There is a strong presumption that a child's best interest is served by maintaining the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). There are nine non-exhaustive factors that are relevant in determining whether termination of parental rights is in the best interest of the child which include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omission committed by the parent which may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The determination of a child's best interest does not require proof of any unique set of factors, and it does not limit proof to any specific factors. *Id.*

The same evidence of acts or omissions used to establish the predicate grounds for termination under Section 161.001(1) may be probative in determining whether termination of parental rights is in the best interest of the child. *In re C.H.,* 89 S.W.3d at 28; *In re L.M.,* 104 S.W.3d 642, 647 (Tex. App. – Houston [1st Dist.] 2003, no pet.). Termination of the

13

parent-child relationship is not justified when the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *Clark v. Dearen,* 715 S.W.2d 364, 367 (Tex. App. – Houston [1st Dist.] 1986, no writ).

*Desires of the child*

The record reflects that S.R. is too young to express his desires. However, the evidence established that S.R. has resided with his foster family since June 2010, S.R. has bonded with his foster family, S.R. is thriving in their home, and S.R.'s foster parents seek to adopt him. *See In re C.H.*, 89 S.W.3d at 28 (holding placement plans and adoption evidence are relevant to best interest determination). On the other hand, H.N. had not seen S.R. in almost one and one-half years, H.N. failed to maintain any contact with S.R. during the pendency of this case, and H.N. conceded that S.R. does not know him at all. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App. – Houston [14th Dist.] 2003, pet. denied) (considering the father's minimal time spent with child as part of best interest determination). These factors support termination.

*The emotional and physical needs of the child now and in the future*
*and the emotional and physical danger to the child now and in the future*

A child needs permanency and security. Nothing in the record establishes that S.R. has any special physical, emotional, or psychological needs. The State of California has denied placement of S.R. in the home H.N. and in the home of H.N.'s aunt. The Department has exhausted all of its options for a family placement in this case. Based upon the evidence before it, the trial court could have reasonably concluded that H.N. was unable to provide a stable life for S.R., which has been found to be of great importance in a child's emotional and physical well-being. *See Hann v. Tex. Dept. of Protective and Regulatory Servs.*, 969 S.W.2d 77, 83

14

(Tex. App. – El Paso 1998, pet. denied).

It is uncontroverted that H.N. had not seen S.R. in almost one and one-half years and had not maintained any contact with S.R. during the pendency of this case. The evidence showed that H.N. is unable to provide a stable or safe home for S.R. and does not have steady employment that would allow him to provide financially for S.R. Mr. Tovar testified that removal of S.R. from his foster home would be detrimental to S.R. Based on this evidence, S.R.'s placement with H.N. constitutes an emotional and physical danger to H.N. both now and in the future. *See In re C.H.*, 89 S.W.3d at 28 (finding termination in child's best interest where father failed to provide emotional or financial support and had an extensive criminal history). These factors favor termination.

*The parenting abilities of the parties seeking custody*
*and the programs available to assist the parties seeking custody*

As explained above, not only has H.N. failed to maintain any significant contact with S.R., he is unable to provide a safe and secure home for S.R. in California, as he lacks steady employment which would allow him to provide financially for S.R. At the termination hearing, H.N. conceded that he had not fulfilled his parental responsibility to provide for his child. Mr. Tovar testified that termination of H.N.'s parental rights was in S.R.'s best interest due to H.N.'s lack of motivation to keep in touch with S.R., the ICPC denial, and because as a result of his failure to participate in any services, H.N. has not demonstrated he has parenting abilities. Mr. Tovar agreed that being prepared is a parenting ability and testified that H.N. had not demonstrated that he was prepared at any stage of this case.

The Department provided H.N. with a service plan and explained the importance of accomplishing the tasks set forth therein. In addition, the Department provided guidance for

15

obtaining services in California, provided him with phone numbers and a list of service providers in California, set up an appointment with a service provider in California, and initiated ICPC home studies for the homes of H.N. and his aunt. H.N. explained that he had not completed the services requested by the Department because he did not get help from anyone in the Department and that he was not informed where to go for services. This evidence is supportive of the trial court's termination determination.

*The plans for the child by the parties seeking custody*
*and the stability of the home or proposed placement*

H.N. did not provide any insight on his permanent plans for S.R.'s future other than his intention to be reunited with S.R. so that they can return to California. When asked when he would return to California if he was permitted to take S.R. home, H.N. answered that they would leave that night and indicated that he and S.R. would stay with his aunt. H.N. was unable to provide an address for his aunt's home, but indicated that it was the home at which the Department had conducted a home study. The Department recommended that H.N.'s parental rights be terminated and maintained that adoption was in the best interest of S.R. S.R.'s foster parents seek to adopt. S.R.'s foster mother testified that she and her family plan to raise S.R. through college, they are prepared for any future problems S.R. may have, she had no intention of completely cutting H.N. out of S.R.'s life, and that their goal was to adopt S.R.

As discussed above, the uncontroverted evidence shows that H.N. is unable to provide a safe and stable home in which S.R. could reside and has not been able to find steady employment. Additionally, the Department has exhausted all of its options for placing S.R. with H.N. or his relatives. On the other hand, S.R.'s foster parents have cared for S.R. continuously since June 2010, and seek to make S.R. a permanent part of their family. These

16

factors favor termination.

*The acts or omissions committed by the parent and*
*any excuse for the acts or omissions committed by the parent*

It is uncontroverted that H.N. failed to maintain any contact with S.R., he has failed to provide a safe and stable home in which S.R. could reside, and he lacks steady employment which would allow him to provide financially for S.R. On appeal, H.N. asserts that his lack of contact with S.R. cannot be held against him because the Department did not make the child available to him.

The evidence shows that H.N. was granted weekly supervised visitation with S.R. The Department also informed H.N. that he could send letters, pictures, drawings, and gifts to S.R. H.N. claimed that he was never given any information on S.R.'s whereabouts and that he did not have a phone number for the Department. Moreover, H.N. claimed that was unable to visit S.R. because he was too busy moving, looking for a job, and completing the services he was asked to complete by the Department. However, Appellant admitted that he had not moved yet, had not found full-time employment, and had not completed any of the requested services. The trial court was free to disbelieve some or all of H.N's excuses based on the evidence presented, and reasonably could have formed a firm belief or conviction that his excuses for his actions and inactions were inadequate. The trial court could also reasonably have formed a firm belief and conviction that H.N.'s acts and omissions do not support an appropriate parent-child relationship. These factors favor termination.

After weighing all the evidence as it relates to the nine *Holley* factors, the trial court could have reasonable formed a firm belief of conviction that termination of H.N.'s parental rights was in the best interest of S.R. We conclude the evidence was legally and factually

17

sufficient to support the trial court's best-interest determination. *In re H.R.M.*, 209 S.W.3d at 108; *In re J.F.C.*, 96 S.W.3d at 266. Issue Four is overruled.

## CONSERVATORSHIP

In Issue Five, H.N. contends that he should be appointed as S.R.'s managing conservator and that the trial court erred in deciding that H.N.'s appointment as sole managing conservator was not in the best interest of S.R. and by appointing S.R.'s foster parents as the joint managing conservators of S.R. Specifically, H.N. argues that no evidence was presented to overcome the parental presumption in favor of appointing him as sole managing conservator of S.R. *See* TEX. FAM. CODE ANN. § 153.131(a) (West 2008).

A rebuttable presumption exists that it is in a child's best interest for his parents to be named his joint managing conservators. *Id*. at § 153.131(b). In order for this presumption to be rebutted, a trial court must find that the appointment of a parent would "significantly impair the child's physical health or emotional development . . . ." *Id*. at § 153.131(a); *In re J.A.J.*, 243 S.W.3d at 616. The trial court's primary consideration in determination the issue of conservatorship and possession is always the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2008).

A trial court's order regarding conservatorship is reviewed under an abuse-of-discretion standard, and may be reversed only if the trial court's decision is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d at 616; *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App. – Houston [1st Dist.] 2002, pet. denied). A trial court abuses its discretion when it acts arbitrary or unreasonable, without reference to any guiding rules or principles. *In re J.A.J.*, 243 S.W.3d at 616. Although the standard of proof for termination of parental rights is clear and convincing

18

evidence, the findings necessary to appoint a non-parent as sole managing conservator need only be established by a preponderance of the evidence. TEX. FAM. CODE ANN. § 153.005 (West 2008); *In re J.A.J.*, 243 S.W.3d at 616.

In this case, the evidence supporting the termination of parental rights, discussed above, also shows that it is more likely than not that appointment of H.N. as sole managing conservator of S.R. would result in significant impairment to S.R.'s physical health or emotional development, thus permitting the appointment of S.R.'s foster parents as his joint managing conservators. *See* TEX. FAM. CODE ANN. § 153.131 (West 2008). The most significant evidence related to this issue is H.N.'s inability to provide a safe and stable environment in California in which S.R. could reside based on the denial of the ICPC home study on his home and the denial of S.R.'s placement in the home of H.N.'s aunt. The Department has no other options for placing S.R. with H.N or his relatives. Mr. Tovar testified that S.R.'s emotional and physical needs were being met by his foster parents and that removing him from that environment would be bad for his emotional health and could probably cause distress and trauma because S.R. is at a developmental stage where being in a stable environment is of dire importance.

The evidence also demonstrated that H.N. failed to maintain any significant contact with S.R. throughout the pendency of this case and that they are strangers to each other. At the termination hearing, H.N. agreed that it would be harmful to S.R. to break the attachment he has to his foster parents. Applying a preponderance-of-the-evidence standard, we conclude the evidence was sufficient to show that H.N.'s appointment as managing conservator would significantly impair S.R.'s physical health or emotional development. *See* TEX. FAM. CODE

ANN. § 153.131(a) (West 2008); *In re J.A.J.*, 243 S.W.3d at 616.    Issue Five is overruled.

## CONCLUSION

Having overruled H.N.'s dispositive issues, we affirm the trial court's order terminating H.N.'s parental rights and naming S.R.'s foster parents as joint managing conservators.


                                        GUADALUPE RIVERA, Justice

March 13, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

20