

**IN THE
TENTH COURT OF APPEALS**

**No. 10-19-00325-CV**

**IN THE INTEREST OF H.J.Y.S., A CHILD**

**From the 361st District Court
Brazos County, Texas
Trial Court No. 12-003150-CV-361**

## MEMORANDUM OPINION

This is a unique appeal of a judgment that terminated the parent-child relationship brought by H.J.Y.S., a child, against his mother, Frederica, and granted a motion to modify the parent-child relationship between H.J.Y.S. and his maternal aunt, Maria. The Department of Family and Protective Services removed H.J.Y.S. from Frederica in 2012 when he was four years old. At the final hearing in 2014, the Department attempted to nonsuit the case or to have H.J.Y.S. placed with Maria. Instead, against its wishes, the Department was named the permanent managing conservator of H.J.Y.S. and Frederica and Maria were both named possessory conservators. The trial court did not allow the nonsuit and additionally ordered that the child remain with the foster family where he

had been placed twice during the case prior to the final order in 2014. H.J.Y.S. is still placed with the same foster family.

In early 2018, Frederica was deported to her home country of Guatemala after being arrested for criminal activity. Later in 2018, the attorney ad litem for H.J.Y.S. filed a petition to terminate the parent-child relationship between H.J.Y.S., Frederica, and H.J.Y.S.'s alleged father and a motion to modify seeking the removal of Maria as a possessory conservator. Maria filed a counter-petition to modify, which was later amended to solely seek to be appointed as the permanent managing conservator of H.J.Y.S. The Department was not in favor of the termination of parental rights or either party's modification but preferred to maintain the status quo of maintaining permanent managing conservatorship with H.J.Y.S.'s placement with the foster family continuing and Maria having visitation.

Maria demanded a jury trial, after which the jury found that the termination should be granted and H.J.Y.S.'s modification be granted to remove Maria as a possessory conservator. The jury also found that Maria should not be appointed the permanent managing conservator of H.J.Y.S. Based on the jury's findings, the trial court entered a judgment terminating Frederica's parental rights and granting the motion to modify to

remove Maria as a possessory conservator. Both Frederica and Maria appeal from the judgment of the trial court.[1]

Frederica complains that the judgment must be reversed because the trial court did not have jurisdiction over her because she was not properly served pursuant to the rules of civil procedure, the evidence was legally and factually insufficient to support the predicate grounds for termination pursuant to Section 161.001(b)(1)(E) and (N) of the Family Code, and that the jury charge's instructions were erroneous regarding the Department's efforts to return the child to his mother. Frederica does not challenge the best interest finding on appeal.

Maria complains that the evidence was legally and factually insufficient to establish a material and substantial change in circumstances and legally and factually insufficient for the jury to have found that the modification was in the best interest of H.J.Y.S. Because we find that the evidence was factually insufficient as to Section 161.001(b)(1)(E), we modify the judgment to delete the reference to the termination on that ground. Having found no reversible error, we otherwise affirm the judgment of the trial court as modified. Frederica and Maria's issues are entirely distinct as are the standards of review to be applied to each; therefore, we will address them separately with discussions of the relevant facts to each within each section.

---

[1] The Department participated in the trial as a party and argued that all relief should be denied as to the termination and the competing modifications. The Department did not file a notice of appeal and declined to file a brief.

## IMPROPER SERVICE OF CITATION

In her first issue, Frederica complains that the trial court did not have jurisdiction over her because she was not properly served with citation. Early in 2018, Frederica was deported to Guatemala. Counsel for H.J.Y.S. attempted to serve her by certified mail, but the clerk's office was unable to send the citation because of the lack of postal services and addresses in the town where Frederica resides in Guatemala. Counsel for H.J.Y.S. filed a motion for substituted service pursuant to Rule 106 of the Rules of Civil Procedure and attached an affidavit in support of the motion. Frederica's attorney ad litem objected to the motion, but the trial court granted the motion to allow service to be made on Frederica's brother in Bryan, Texas. Frederica's brother gave the citation to an individual who was traveling to Guatemala. That person gave the citation to Frederica's mother, who told Frederica's brother that she threw it away because they could not understand it. Frederica complains that the affidavit was insufficient to allow substituted service pursuant to Rule 106, and therefore, the trial court erred by granting H.J.Y.S.'s motion for substituted service. Frederica contends that because she was not properly served, the trial court did not have jurisdiction over her.

Establishing personal jurisdiction over a defendant requires valid service of process. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) ("Personal jurisdiction, a vital component of a valid judgment, is dependent 'upon citation issued and served in a

manner provided for by law.'"). "If service is invalid, it is 'of no effect' and cannot establish the trial court's jurisdiction over a party." *In re E.R.*, 385 S.W.3d at 563. A complete failure of service deprives a litigant of due process and deprives the trial court of personal jurisdiction; any resulting judgment is void and may be challenged at any time. *In re E.R.*, 385 S.W.3d at 566. At a minimum, "due process requires 'notice and an opportunity to be heard.'" *In re P. RJ E.*, 499 S.W.3d 571, 575 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

However, complaints regarding service of process can be waived: a party waives a complaint regarding service of process if she makes a general appearance. *In re D.M.B.*, 467 S.W.3d 100, 103 (Tex. App.—San Antonio 2015, pet. denied); *see* TEX. R. CIV. P. 120a (setting out procedure for making special appearance, providing that special appearance "shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion," and stating that "[e]very appearance, prior to judgment, not in compliance with this rule is a general appearance"). A party enters a general appearance when she (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by her acts that an action is properly pending, or (3) seeks affirmative action from the court. *In re D.M.B.*, 467 S.W.3d at 103 (*quoting Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304-05 (Tex. 2004) (per curiam)); *see In re R.A.G.*, 545 S.W.3d 645, 655 (Tex. App.—El Paso 2017, no pet.); TEX. R. CIV. P. 120 (providing that defendant may, in person or by attorney, enter appearance in open court and this appearance "shall have

the same force and effect as if the citation had been duly issued and served as provided by law").

In determining whether a general appearance has occurred, the emphasis is on affirmative action by the party, not on whether the party seeks affirmative relief. *In re D.M.B.*, 467 S.W.3d at 104. "[A] party's request for affirmative action constitutes a general appearance because such a request recognizes a court's jurisdiction over the parties, whereas the mere presence by a party or his attorney does not constitute a general appearance." *Id*. at 103. In the termination of parental rights context, when an attorney ad litem attends a hearing and announces "not ready," but participates in the hearing by taking such actions as objecting to the admissibility of evidence or questioning witnesses about information relevant to the termination of the parent's parental rights, the attorney's actions constitute a general appearance and establish the court's personal jurisdiction over the parent. *See id*. at 103-04 (holding that parent generally appeared through attorney ad litem when attorney appeared at adversary hearing, announced "not ready," but made repeated objections to Department's request for temporary restraining order and to admissibility of evidence); *see also In the Interest of Y.W.*, No. 04-17-00445-CV, 2017 Tex. App. LEXIS 9987 at *4 (Tex. App.—San Antonio Oct. 25, 2017, pet. denied) (holding that parent waived complaint about service when "attorney ad litem attended the termination hearing, announced not ready, but sought the trial court's consideration of not only the child's best interest, but also the alleged grounds for termination"); *In re*

*R.A.G.*, 545 S.W.3d at 655 (holding that party generally appeared by filing answer, attending trial by telephone, and attorney questioned witnesses and made final argument); *In re P.Y.M.*, No. 04-13-00024-CV, 2013 Tex. App. LEXIS 9803, 2013 WL 4009748, at *2 (Tex. App.—San Antonio Aug. 7, 2013, pet. denied) (mem. op.) (holding that party generally appeared when ad litem attorney attended termination hearing and announced "not ready," but questioned sole witness at hearing about information relevant to termination of rights and stated during argument that parent "has indicated that he would like whatever is in his child's best interests").

In this proceeding, an attorney ad litem was appointed to represent Frederica in the original proceeding, and the appointment continued past the final judgment entered in 2014 which named the Department as the permanent managing conservator. Frederica was represented by the same attorney ad litem at all of the placement hearings conducted after the 2014 judgment. Shortly after the petition for termination was filed, Frederica's attorney ad litem filed a motion to substitute counsel but no reason was given in the motion for the substitution. The motion to substitute was granted and new counsel was appointed.

In this proceeding, in addition to Frederica's attorney ad litem's objection to the motion for substituted service and motion to reconsider the motion for substituted service, the attorney ad litem announced "not ready" shortly after the trial began, but then also participated in voir dire, made objections, asked questions of witnesses, participated

in the jury charge conference, and made a closing argument asking the jury to refuse to terminate Frederica's parental rights.  We find that Frederica's attorney ad litem entered a general appearance that waived the objections to the form of service on Frederica, and that his representation was sufficient to protect her fundamental constitutional rights.  Because of this, the trial court properly exercised personal jurisdiction over Frederica.  Frederica's first issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In her second issue, Frederica complains that the evidence was legally and factually insufficient for the jury to have found that she committed either of the two predicate acts upon which the termination was based.  The jury charge required the jury to consider two predicate acts, Section 161.001(b)(1)(E) and (N) of the Family Code in order to terminate the parent-child relationship.

If a trial court finds multiple predicate violations, we will affirm on any one violation that is established by clear and convincing evidence in addition to the best interest finding.  *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).  However, the Texas Supreme Court has mandated that due to the significant collateral consequences of terminating parental rights under section 161.001(b)(1)(D) or (E), "[a]llowing section 161.001(b)(1)(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights."  *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).  Thus, since Frederica has

challenged the predicate termination ground under Section 161.001(b)(1)(E), we will address and detail our analysis under that section first. *See id.*

STANDARD OF REVIEW

In conducting a legal-sufficiency review in an appeal from a termination order, we examine the evidence in a light favorable to the findings and determine whether a reasonable jury could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the jury resolved disputed facts in favor of its finding if a reasonable jury could do so and disregard all evidence that a reasonable jury could have disbelieved or found not to have been credible. *Id.* If we determine that no reasonable jury could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In conducting a factual-sufficiency review, we determine whether, considering the entire record, a jury reasonably could have formed a firm conviction or belief about the truth of the matter on which H.J.Y.S. bore the burden of proof. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider whether the disputed evidence is such that a reasonable jury could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. Viewed in light of the whole record, if the disputed evidence that a reasonable jury could not have credited in favor of a finding is so significant that the jury

could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Deciding whether and to what degree to credit the evidence introduced at trial is the jury's role, not ours. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). The jury is the sole evaluator and arbiter of witness credibility. *Id.*

ENDANGERMENT

Section 161.001(b)(1)(E) of the Family Code provides that a parent's rights may be terminated if it is found that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Endangerment means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *In re J.O.A.*, 283 S.W.3d at 345. Rather, the specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533.

Frederica argues that the evidence was legally and factually insufficient to support the jury's finding pursuant to Section 161.001(b)(1)(E) because there was no specific evidence regarding her alleged alcohol abuse and how it endangered H.J.Y.S.. Frederica's brother testified that Frederica had an alcohol problem and that he had recommended that she stop drinking on multiple occasions. A caseworker for the Department testified that Frederica's family knew that she had a drinking problem and cared for the child "while she was an alcoholic." The caseworker was unable to testify regarding the reasons for removal because of a hearsay objection by Frederica, but did testify that there were concerns for H.J.Y.S.'s safety and "her behavior with him," that she was breastfeeding him while ingesting alcohol which could result in H.J.Y.S. ingesting alcohol." There was no evidence, however, of any instances of Frederica's behavior under the influence of alcohol while she had H.J.Y.S. in her possession or that H.J.Y.S. had alcohol in his system. The Department did concede that it would not consider returning H.J.Y.S. to his mother because she was a danger to him. The evidence that was presented regarding Frederica's alcohol use, standing alone, would not be sufficient to support the judgment.

In addition to Frederica's issues with alcohol, the record shows that Frederica was arrested multiple times, mostly for criminal trespass, which ultimately led to her deportation in early 2018. However, there is no evidence regarding how many times she was arrested, for what offenses she was arrested other than criminal trespass, if she was

convicted of the offenses and if so, what sentences she received for the offenses, or what offense ultimately resulted in her deportation.

Deportation, like incarceration, is a consequence of an action, and like incarceration, deportation alone cannot establish a course of conduct endangering a child. *See In the Interest of E.N.C.*, No. 06-10-00131-CV, 2011 Tex. App. LEXIS 6444, 2011 WL 3570316, at *11 (Tex. App.—Texarkana Aug. 16, 2001, pet. filed) (analogizing deportation to imprisonment). However, deportation, like imprisonment, is a factor that is properly considered when assessing endangerment. *See Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 437 (Tex. App.—El Paso 2004, no pet.). A deported parent, like an incarcerated parent, is absent from the child's daily life and unable to provide support. *See In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A parent who repeatedly commits criminal acts subjects herself to the possibility of deportation and negatively impacts a child's living environment and emotional well-being. *See id*. Generally, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In the Interest of R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder, not the appellate court, is the sole arbiter of the witnesses' credibility and demeanor, we conclude that there was some evidence of endangerment on which a reasonable factfinder could have formed a firm belief or

conviction of endangerment and therefore, the evidence was legally sufficient. TEX. FAM. CODE ANN. § 161.001(1)(E); *In re J.F.C.*, 96 S.W.3d at 266.

Ultimately, however, in our review of the entire record, we find that the lack of specific evidence regarding a course of conduct outside of some general testimony regarding alcohol abuse and her criminal history that resulted in her deportation renders the evidence such that the jury reasonably could not have formed a firm conviction or belief that Frederica endangered H.J.Y.S. as required by Section 161.001(b)(1)(E) and that the evidence was factually insufficient. *See In re C.M.C.*, 554 S.W.3d 164, 172-73 (Tex. App.—Beaumont 2018, no pet.). We sustain this issue in part as to the Section 161.001(b)(1)(E) finding.

CONSTRUCTIVE ABANDONMENT

The judgment also terminated Frederica's parental rights based on constructive abandonment pursuant to Section 161.001(b)(1)(N) of the Family Code. Section 161.001(b)(1)(N) provides that a parent's rights may be terminated if the parent:

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and

> (i) the department has made reasonable efforts to return the child to the parent;

> (ii) the parent has not regularly visited or maintained significant contact with the child; and

> (iii) the parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(b)(1)(N). In her brief to this Court, Frederica's complaint is limited to a complaint of the sufficiency of the evidence of Section 161.001(b)(1)(N)(i), that the evidence was legally and factually insufficient to show that the Department made reasonable efforts to return the child to the parent. We will likewise limit our analysis to that complaint. Frederica recognizes that the preparation of a service plan by the Department generally constitutes a reasonable effort to return the child. *See In re G.P.*, 503 S.W.3d 531, 533 (Tex. App.—Waco 2016, pet. denied). However, Frederica argues that there was no evidence that a service plan was implemented. We agree that the service plan was not specifically admitted into evidence; however, throughout the trial, evidence was presented regarding services that the Department did provide to Frederica, such as a psychological and psychiatric evaluation, as well as visitation with H.J.Y.S.. Frederica did attend both evaluations; however, they were not successfully completed due to perceived auditory issues and a language barrier.

Frederica's native language was K'iche, a native dialect in Guatemala, and the Department did not have a translator available who spoke K'iche. Frederica did speak some Spanish, but it was disputed as to how much Spanish she understood. Multiple witnesses testified that she did speak some Spanish to people involved in the proceedings. The level to which Frederica understood Spanish was highly contested at trial. The caseworkers for the Department were split on how much Spanish Frederica understood and the supervisor felt that she did not understand it at all. The psychological

and psychiatric evaluations were not fully completed due to her lack of comprehension. However, the CASA workers testified that she understood Spanish enough to converse with them. At the time of H.J.Y.S.'s removal from Frederica, H.J.Y.S. only spoke Spanish and did not speak K'iche.

A caseworker and supervisor for the Department testified that they did not feel that they were able to make any reasonable efforts to return the child because they were unable to offer her services in large part due to the language barrier. However, even if the service plan was not sufficient to determine whether or not reasonable efforts were made by the Department, the statute does not require the implementation of a service plan to prove constructive abandonment under Section 161.001(b)(1)(N)(i). *See H.N. v. Department of Family and Protective Services*, 397 S.W.3d 802, 809 (Tex. App.—El Paso 2013, no pet.).

In this proceeding, the Department made every effort to place H.J.Y.S. with relatives. The Department did place H.J.Y.S. with Frederica's brother for approximately 11 months during the initial case before Frederica's brother relinquished him back to the Department and he was placed back with the foster parents. After H.J.Y.S. was returned to foster care, the Department conducted a home study on a second brother which was disapproved and then conducted a home study on Maria's home. The home study on Maria was approved by the Department immediately prior to the trial in 2014 and the Department recommended placing H.J.Y.S. with Maria at the trial in 2014. The

Department's efforts to place H.J.Y.S. with relatives may constitute legally and factually sufficient evidence to support the trial court's finding that the Department made reasonable efforts. *See In re J.G.S.*, 550 S.W.3d 698, 704-05 (Tex. App.—El Paso 2018, no pet.); *H.N.*, 397 S.W.3d at 810. While the cases involving placement with relatives generally involve the inability to place children directly with incarcerated parents, we find that the analysis is sufficiently analogous to the unique facts of this proceeding, which include the Department's difficulties in providing services to Frederica due to her perceived language barrier and questionable understanding, and Frederica's criminal behavior both before and after the 2014 judgment and which eventually led to her deportation, which as discussed above, we consider similarly to incarceration.

However, even if the attempts to place H.J.Y.S. with relatives should not be considered as reasonable efforts to return the child to the parent, the Department's actions at the trial in 2014 also constitute an attempt to return the child to Frederica. At the trial in 2014, in an attempt to secure placement of the child with Maria rather than the child remaining with the foster care parents, the Department attempted to nonsuit the case entirely. The supervisor for the Department testified that by requesting the nonsuit, the Department knew that the legal effect of the nonsuit would be a return to Frederica with no further involvement from the Department. The Department believed that H.J.Y.S. would live with Maria in the event of the nonsuit, but there would have been no court order to that effect. We find that the evidence was legally and factually sufficient for the

jury to have found that the Department made reasonable efforts to return the child to Frederica.

Having found that the evidence was factually insufficient regarding Section 161.001(b)(1)(E), we sustain Frederica's second issue in part, order that the judgment be modified to delete the finding pursuant to that section. However, because "[o]nly one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest," Frederica's second issue is otherwise overruled. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## JURY CHARGE ERROR

In her third issue, Frederica complains that the jury charge was erroneous because it misstated the law regarding what constitutes reasonable efforts to return the child and was erroneous. The jury charge contained an instruction that "[r]easonable efforts to return the child to the parents may include efforts to place the child with family members." Frederica complains that this is a misstatement of the law because it excuses the Department from making any effort to return the child to his parent. The attorney for Maria objected to the inclusion of this instruction and counsel for Frederica joined in the objection.

We review a trial court's decision to submit or refuse a particular jury instruction under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex.

2006).  When submitting a jury charge, the trial court is afforded more discretion when submitting instructions than when submitting questions.  In re E.M., 494 S.W.3d 209, 227-28 (Tex. App.—Waco 2015, pet. denied).  To be proper, an instruction must (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and the evidence.  *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000).

As stated above, we have found that the Department's efforts to place H.J.Y.S. with relatives in this proceeding are proper considerations regarding the sufficiency of the evidence regarding the reasonable efforts element relating to constructive abandonment.  Because of this, the instruction did not inaccurately state the law and therefore, was not erroneously included in the jury charge on this basis.  We overrule Frederica's third issue.

## Maria

In her first issue, Maria complains that the evidence was legally and factually insufficient to prove that a material and substantial change had occurred since the rendition of the prior order.  In her second issue, Maria complains that the evidence was legally and factually insufficient for the jury to have found that the modification was in the best interest of the child.

### Standard of Review

A conservatorship order may be modified if modification is in the child's best interest and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the date of rendition of the

conservatorship order.  TEX. FAM. CODE ANN. § 156.101(a)(1)(A).  A jury's findings underlying a conservatorship decision are subject to ordinary legal and factual sufficiency review.  *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Arredondo v. Betancourt*, 383 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  In a legal-sufficiency review, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable jury could, and disregarding contrary evidence unless a reasonable jury could not.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005).  In a factual-sufficiency review, we examine the entire record and set aside a jury's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *In re T.T.*, 228 S.W.3d 312, 316 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  We are mindful in both reviews that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *City of Keller*, 168 S.W.3d at 819.  We may not substitute our judgment for the jury's, even if we would reach a different answer on the evidence.  *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

**SUBSTANTIAL AND MATERIAL CHANGE**

In her first issue, Maria complains that the evidence was legally and factually insufficient for the jury to have found that there was a material and substantial change in circumstances to warrant the modification.  The party seeking to modify a conservatorship order must prove a material and substantial change in the circumstances

of any of the following: the child, the parent, the sole managing conservator, the possessory conservator, or any other party affected by the order denying termination. *See* TEX. FAM. CODE ANN. § 156.101(1). In our review of the sufficiency of the evidence, we are mindful that the jury was not confined to rigid or definite guidelines in deciding whether a material and substantial change of circumstances occurred. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). This determination is fact-specific and must be made according to the unique circumstances of this case. *Id.*

Maria argues that the evidence was legally and factually insufficient for the jury to have determined by a preponderance of the evidence that there was a material or substantial change in circumstances because the only evidence of a change in circumstances was the Department's witnesses testifying that there was no change to justify the modification other than the mother's deportation. Before Frederica's deportation, her contact with H.J.Y.S. and the Department was very limited and sporadic. After Frederica was deported in 2018, she did not have any contact with H.J.Y.S. even though she had conversations with other members of her family. There was testimony that Frederica would likely never see H.J.Y.S. again due to the deportation and health issues from injuries from an accident she had suffered. Since the time of the 2014 judgment, any relationship between them had diminished to the extent that H.J.Y.S. no longer had an emotional attachment to Frederica. On the other hand, during the years between the 2014 judgment and this trial, H.J.Y.S. began expressing his strong desire to

be adopted by his foster parents. While he was upset when he was told that adoption would have the legal effect of ending Maria's right to visits, H.J.Y.S. continued expressing his desire to be adopted. There was no evidence that he was upset by or even had a bond with Frederica at that point. We find that the evidence was legally and factually sufficient to establish that there had been a material and substantial change in circumstances at the time of the modification.

## BEST INTEREST OF THE CHILD

In her second issue, Maria complains that the evidence was legally and factually insufficient for the jury to have found that the modification was in the best interest of H.J.Y.S.. The child's best interest holds paramount importance in making any conservatorship determination. *See* TEX. FAM. CODE ANN. § 153.002; *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000). A court may use the following non-exhaustive list of factors to determine the child's best interests: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist this individual to promote the best interest of the child; (6) the plans for the child by the individual seeking custody; (7) the stability of the home; (8) the acts or omissions of the conservator that may indicate that the existing adult-child relationship is not proper; and (9) any excuse for the acts or omissions of the conservator. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

DESIRES OF THE CHILD

H.J.Y.S., who was 11 years old at the time of the trial, was very bonded to his foster family, and the evidence established that he had expressed his desire to be adopted by them to multiple people, including the Department, his foster parents, and the ad litems. He called his foster parents "mom" and "dad." However, H.J.Y.S. enjoyed his visits with Maria and her children and wanted them to continue. Maria had told H.J.Y.S. that if the termination was granted that the foster parents would never allow him to see Maria again, which was upsetting to him. H.J.Y.S. wanted the Department to be out of his life.

EMOTIONAL AND PHYSICAL NEEDS NOW AND IN THE FUTURE

There was little evidence regarding specific emotional needs of H.J.Y.S.. His foster parents had been taking him to counseling for many years but the counselor did not participate in the trial. H.J.Y.S. had been the victim of an incident the Department referred to as "pantsing" by Maria's children which resulted in the restriction of her visitation to public locations only which was very upsetting to him according to the foster mother. The foster parents were meeting H.J.Y.S.'s physical needs and there was no evidence that they would not continue to do so if the modification were granted. The foster parents testified also that they would continue to allow the relationship between H.J.Y.S. and his relatives if the modification was granted, although Maria testified that she did not believe this to be true. The Department's representatives testified that they believed it would emotionally harm H.J.Y.S. to not have contact with Maria and her

children.

EMOTIONAL AND PHYSICAL DANGER NOW AND IN THE FUTURE

Outside of the incident with Maria's children, there was no evidence of physical danger to H.J.Y.S. now. The supervisor for the Department testified that H.J.Y.S. was very bonded to the foster family as well as to Maria and her children, and that she believed that any change relating to either would be very emotionally harmful to H.J.Y.S.. The foster parents testified that they would continue the relationship between H.J.Y.S. and his family, which would eliminate the potential emotional harm from the modification. The foster mother was concerned that Maria was encouraging H.J.Y.S. to keep things from her, such as when she told H.J.Y.S. that he would not see her again if he was adopted. There was scant evidence regarding emotional danger to H.J.Y.S. if the modification was denied and the foster parents were thus unable to adopt him, although he had told many people he wanted to be adopted.

STABILITY OF THE HOME

It was undisputed that the home of the foster parents was stable. Maria's home had been approved by the Department as a suitable placement for H.J.Y.S., although Maria only had contact with H.J.Y.S. in public locations for up to four hours on designated weekends. Maria had been in the United States since 1995 and had not been deported but was not legally in this country; however, there was no evidence to show that she was likely to be deported. Maria testified that in the event she were ever to be

deported that she would leave H.J.Y.S. with other family members who were lawfully in the United States.

STABILITY FOR H.J.Y.S.

H.J.Y.S.'s continued placement with the foster parents was ordered by the trial court in 2014 and at the placement hearings conducted since the prior judgment in 2014. There was tremendous conflict between the Department and the ad litems throughout the proceedings regarding H.J.Y.S.'s best interest. The Department had wanted H.J.Y.S. to be placed with Maria and felt that the guardian ad litem had presented false testimony to the trial court which resulted in the placement as ordered. However, the Department recognized at trial that it was best for H.J.Y.S. to remain with the foster family because of the great bond he had with them. While granting the modification would make it possible for H.J.Y.S. to be adopted, it would also mean that Maria would have no legal right to visit with H.J.Y.S..

ANALYSIS

Viewing the evidence by the appropriate standards, we find that the evidence was legally and factually sufficient for the jury to have found that the modification was in the best interest of H.J.Y.S.. While it is apparent that H.J.Y.S. wants to continue to visit Maria, he also wanted to be adopted by his foster parents which would give him permanency and stability, which he did not have under the then-existing orders. We do not find that the evidence presented to the jury was so contrary to the overwhelming weight of the

evidence as to be clearly wrong and unjust. We overrule Maria's second issue.

## CONCLUSION

Having found that the evidence was factually insufficient for the jury to have found that Frederica endangered H.J.Y.S. pursuant to Section 161.001(b)(1)(E), we order that the judgment be modified to delete that finding. Having found no reversible error as to Frederica or Maria, we affirm the judgment of the trial court as modified.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill*
     (Justice Neill concurs in the judgment with a note)*
Modified, and affirmed as modified
Opinion delivered and filed February 26, 2019
[CV06]

     *Justice Neill concurs in this Court's judgment to the extent that it affirms the trial court's judgment terminating the parental rights of Frederica and removing Maria as a possessory conservator. While I concur with the opinion that the judgment of the trial court should be affirmed, I disagree with the judgment modifying the trial court's judgment to delete the finding that Frederica endangered H.J.Y.S. pursuant to Section 161.001(b)(1)(E). I believe, following a review of the record, that the evidence presented was factually sufficient to support termination under Section 161.001(b)(1)(E).

